Mercedes-Benz Finan

# NEW JERSEY
## Motor Vehicle Lease Agreement

**The First Class Lease®**

### Dates

The date of this lease is **11/10/2022**.    The scheduled date this lease ends is **11/10/2026** ("Lease End").
The scheduled term of this lease is **48** months ("Lease Term").

### Parties

Lessor (Dealer): **MERCEDES-BENZ OF CHERRY HILL**
Address: **2151 RT. 70 WEST**
**CHERRY HILL, NJ  08002**
Phone No: **(856) 663-3200**
Lessee: **CODE RED HEALTHCARE SERVICES**
Co-Lessee: **SHAVON PARKER**
Lessee's Billing Address: **1635 MARKET STREET STE 1600**
**PHILADELPHIA  PA  19103**
**PHILADELPHIA**
(Include County)

Address of principal garage location, if different from Lessee's Billing Address (no P.O. Box):
**N/A**
**N/A**
(Include County)

Unless otherwise specified, "lease" refers to this Motor Vehicle Lease Agreement; "vehicle" refers to the vehicle described below; "you", "your", and "yours" refer to the Lessee and any Co-Lessee; "we", "us", and "our" refer to the Lessor and, after the lease is assigned, to DAIMLER TRUST, or its successors and assigns; "Assignee" refers to DAIMLER TRUST or its successors and assigns. The "Vehicle Turn-In Fee" is a fee to cover the cost of disposing of the vehicle, commonly referred to as a disposition fee. "Pre-owned" refers to used vehicles. You agree to lease the vehicle from us on the terms and conditions provided for in this lease. The terms and conditions contained in this lease are made on behalf of Lessor and Assignee.

### Type of Lease

[X] Standard Lease    [ ] Single Payment Lease

If the Single Payment Lease box is checked above, "Monthly Payments" or "First Monthly Payment" are replaced with the words "Single Lease Payment" throughout this lease and the word "Monthly" in section 6.j. on page 2 is deleted.

### Vehicle Information

[X] New    [ ] Pre-owned    VIN: **W1K5J4HB6PN336867**

Primary Intended Use
[X] Personal    [ ] Business, Commercial, or Agricultural Purposes

Year: **2023**    Make: **MERCEDES-BENZ**    Model: **CLA250C4**

Body Style: **4DR**    Odometer Reading: **8**

If no box is checked, or if the Personal box is checked, you agree to use the vehicle for personal, family or household purposes.

No. of Cylinders: **4**    [X] Power Steering    [X] Automatic Transmission    [X] Power Brakes    [X] Air Conditioning

Prior Use of Vehicle: (If odometer reads in excess of 1,000 miles)
[ ] Demonstrator    [ ] Daily Rental    [X] Personal, Family or Household    [ ] Unknown    [ ] Not Applicable

### Electronic Contracting and Signature Acknowledgment

You agree that (i) this lease agreement is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature, and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract, and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

## Consumer Leasing Act Disclosures

| 1. Amount Due at Lease Signing or Delivery (Itemized below)* $ 5303.89 | 2. Monthly Payments Your first Monthly Payment of $ 999.87 is due on 11/10/2022, followed by 47 payments of $ 999.87 due on the 10th of each month. The total of your Monthly Payments is $ 47993.76. | 3. Other Charges (not part of your Monthly Payment) a. Vehicle Turn-In Fee (if you do not purchase the vehicle at Lease End) $ 595.00 b. N/A $ N/A c. Total $ 595.00 | 4. Total of Payments (The amount you will have paid by the end of the lease) $ 52892.78 |

**\*5. Itemization of Amount Due at Lease Signing or Delivery**

a. Amount Due at Lease Signing or Delivery:
1. First Total Monthly Payment (includes sales/use taxes) ........... $ 999.87
2. Capitalized Cost Reduction ........... + $ 3182.90
3. Acquisition Fee (if not capitalized) ...... + $ N/A
4. Sales/Use Taxes ................. + $ 350.12
5. Refundable Security Deposit ......... + $ N/A
6. Title Fees .................... + $ N/A
7. License Fees .................. + $ N/A
8. Registration Fees ............... + $ 172.00
9. Tire Management Fee ............. + $ N/A
10. LFIS / Supplemental Titling Fee ....... + $ N/A
11. Prior Lien or Lease Balance ......... + $ N/A
12. DOC FEE ................... + $ 599.00
13. N/A ....................... + $ N/A
14. N/A ....................... + $ N/A
15. N/A ....................... + $ N/A
16. Total ..................... = $ 5303.89

b. How the Amount Due at Lease Signing or Delivery will be paid:
1. Net Trade-in Allowance ............ $ N/A
2. Rebates and Noncash Credits ........ + $ N/A
3. Amount to be Paid in Cash ......... + $ 5303.89
4. N/A ....................... + $ N/A
5. Total ..................... = $ 5303.89

6. Your monthly payment is determined as shown below:

a. **Gross Capitalized Cost:** The agreed upon value of the vehicle ($ 51515.69) and any items you pay over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) .... $ 56605.69

b. **Capitalized Cost Reduction:** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost. .............. – $ 3182.90

c. **Adjusted Capitalized Cost:** The amount used in calculating your Base Monthly Payment ................... = $ 53422.79

d. **Residual Value:** The value of the vehicle at the end of the lease used in calculating your Base Monthly Payment ................. – $ 23294.40

e. **Depreciation and any amortized amounts:** The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term ........... = $ 30128.39

f. **Rent Charge:** The amount charged in addition to the Depreciation and any amortized amounts .................... + $ 13109.05

g. **Total of Base Monthly Payments:** The Depreciation and any amortized amounts plus the Rent Charge .............. = $ 43237.44

h. **Lease Payments:** The number of payments in your lease ................... ÷ 48

i. **Base Monthly Payment** ............. = $ 900.78

j. **Monthly Sales/Use Taxes** .......... + $ 99.09

k. N/A .......................... + $ N/A

l. **Total Monthly Payment** ............. = $ 999.87

7. **Early Termination.** You may have to pay a substantial charge if you end this lease early. <u>The charge may be up to several thousand dollars.</u> The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

8. ***Excessive Wear and Use.*** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 48,000 miles (Mileage Allowance) for the term of this lease, at the rate of $ .25 per mile.

9. ***Purchase Option at End of Lease Term.*** You have an option to purchase the vehicle ("as is") at the end of the lease term for $ 23294.40, plus a Purchase Option Fee of $ 150.00, plus a processing fee of $ N/A, plus all official fees and taxes. See the Purchase Option section on page 6 of this lease for more information.

10. ***Other Important Terms.*** See your lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## Consumer Leasing Act Disclosures (Continued)

**11. Itemization of Gross Capitalized Cost:**

| | | |
|---|---|---|
| a. Price of Vehicle | $ | 51515.69 |
| b. Approved Dealer Installed Equipment | $ | N/A |
| c. Service Contract | $ | N/A |
| d. Extended Warranty | $ | N/A |
| e. Credit Life and/or Credit Disability Premium | $ | N/A |
| f. Current Year Taxes, Title, Licenses, Registration | $ | N/A |
| g. Acquisition Fee | $ | 1095.00 |
| h. Sales/Use Taxes | $ | N/A |
| i. Other Tax (describe) N/A | $ | N/A |
| j. Prior Lien or Lease Balance | $ | N/A |
| k. N/A | $ | N/A |
| l. **CORNERSTONE BUNDLE** | $ | 3995.00 |
| m. N/A | $ | N/A |
| n. N/A | $ | N/A |
| o. N/A | $ | N/A |
| p. Total Gross Capitalized Cost | $ | 56605.69 |

**12. Estimated Official Fees and Taxes.** The total estimated amount you will pay for official fees, license, title and registration fees, and taxes over the term of your lease, whether included with your Monthly Payment or assessed otherwise is $ **5794.44**. This is an estimate and the actual total of Official Fees and Taxes may be higher or lower than this estimate. The actual total of Official Fees and Taxes depends on the rates in effect, the value of the vehicle and the garage location of the vehicle at the time the fees and taxes are assessed.

**13. Mileage Allowance.** The odometer reading in the Vehicle Information section of this lease provides the number of miles existing on the vehicle when you entered this lease ("Existing Miles"). Your Mileage Allowance provided in section 8 refers to miles driven during the Lease Term and does not include the Existing Miles.

The odometer reading in the Vehicle Information section of this lease provides the number of miles existing on the vehicle when you entered this lease "Existing Miles". Your Mileage Allowance provided in section 8 refers to miles driven during the Lease Term and does not include the Existing Miles. If your Mileage Allowance in section 8 on page 2 is greater than **48,000** "Base Mileage Amount", you have chosen to purchase additional miles for your Mileage Allowance determination. If you have purchased additional miles, then at Lease End, except as provided below, you will be eligible for a credit or refund of **0.20** per mile for any unused additional miles between the Base Mileage Amount and your Mileage Allowance over the term of the lease. You will not receive a refund if the vehicle is destroyed or stolen, you are in default, you purchase the vehicle, or the refund is less than $1.

**14. Missing Records.** If you do not return the vehicle's maintenance booklets as provided in the Maintenance section of this lease, you will owe a missing records fee in the amount of $ **N/A**.

**15. New and Pre-owned Vehicle Warranty.** If the vehicle is new, it is covered by a standard new vehicle warranty from the manufacturer.

If the vehicle is pre-owned, it is not covered by a warranty unless indicated by a check in the corresponding box below:

☐ Remainder of standard new vehicle warranty from manufacturer
☐ Pre-owned vehicle warranty from manufacturer
☐ Pre-owned warranty from other third-party provider

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties.

**We lease the vehicle to you "AS IS". EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE, AND UNLESS PROHIBITED BY LAW, WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VEHICLE'S (OR ANY PART OR ACCESSORY THEREOF) CONDITION, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE; AND WE MAKE NO OTHER REPRESENTATION OR WARRANTY WHATSOEVER.**

## Consumer Leasing Act Disclosures (Continued)

**16. Optional Insurance and Other Products.** You are not required to buy any of the optional insurance or other products listed on this page to enter into this lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless you are accepted by the provider. By your initials on this page, you agree that you have received a notice of the terms and cost of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer). These coverages are not provided by the Lessor. You must pursue all matters related to these coverages, including refunds, through the provider. The terms and conditions for these coverages are provided in a separate contract, which you acknowledge that you have received and read.

If the price of these coverages is also included in the Itemization of Gross Capitalized Cost, it will be included in the Base Monthly Payments. If not, you have paid for the coverages in full upon signing this lease.

Unless you receive written notification otherwise, credit life and credit disability insurance end on the original due date of the last payment due under the lease.

☐ **Credit Life Provider:** N/A
Initial Coverage: $ N/A    Premium: $ N/A
Lessee Initials: N/A
Co-Lessee Initials: N/A

☐ **Credit Disability Provider:** N/A
Maximum Mo. Benefit: $ N/A    Premium: $ N/A
Lessee Initials: N/A
Co-Lessee Initials: N/A

☐ **Service Agreement Provider:** N/A
Coverage is for N/A months or N/A miles, whichever happens first.
Premium or charge: $ N/A
Lessee Initials: N/A
Co-Lessee Initials: N/A

☐ **Extended Warranty Provider:** N/A
Coverage is for N/A months or N/A miles, whichever happens first.
Premium or charge: $ N/A
Lessee Initials: N/A
Co-Lessee Initials: N/A

## Important Arbitration Disclosures

The following arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.

1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court.
2. If such dispute is arbitrated, you and we will give up the right to a trial by a court or a jury trial.
3. You agree to give up any right you may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant, and you agree to give up any right you may have to consolidate your arbitration with the arbitration of others.
4. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit.
5. Other rights that you and/or we would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this lease, arbitration section or the arbitrability of any issue), between you and us or any of our employees, agents, successors or assigns, which arises out of or relates to a credit application, this lease, or any resulting transaction or relationship arising out of this lease shall, at the election of either you or us, or our successors or assigns, be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. Whoever first demands arbitration may choose to proceed under the applicable rules of, and be administered by, the American Arbitration Association (www.adr.org) or any other organization that you may choose subject to our approval.

Whichever rules are chosen, the arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable rules. The arbitrator shall apply the law in deciding the dispute. Unless the rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. If you demand arbitration first, you will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125, and we will pay any additional initial filing fee or case management fee. We will pay the whole filing fee or case management fee if we demand arbitration first. We will pay the arbitration costs and fees for the first day of arbitration, up to a maximum of eight hours. The arbitrator shall decide who shall pay any additional costs and fees. Nothing in this paragraph shall prevent you from requesting that the applicable arbitration entity reduce or waive your fees, or that we voluntarily pay an additional share of said fees, based upon your financial circumstances or the nature of your claim.

This lease evidences a transaction involving interstate commerce. Any arbitration under this lease shall be governed by the Federal Arbitration Act (9 USC 1, et seq.). Judgment upon the award rendered may be entered in any court having jurisdiction.

Notwithstanding this provision, both you and Lessor and Lessor's successors and assigns retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbitrator. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

If any clause within this arbitration section, other than clause 3 or any similar provision dealing with class action, class arbitration or consolidation, is found to be illegal or unenforceable, that clause will be severed from this arbitration section, and the remainder of this arbitration section will be given full force and effect. If any part of clause 3 or any similar provision dealing with class action, class arbitration or consolidation is found to be illegal or unenforceable, then this entire arbitration section will be severed and the remaining provisions of this lease shall be given full force and effect as if the arbitration section of this lease had not been included in this lease.

## Additional Disclosures Required by New Jersey Law

**Other Lease Information.** MANUFACTURER'S SUGGESTED RETAIL PRICE (MSRP): $ __50640.00__ . **Total Cost of Lease:** The total cost of this Lease, if you do not default and you exercise the purchase option at the end of the Lease Term, is $ __75742.18__ . This amount is figured by adding the Amount Due at Lease Signing or Delivery (minus the first monthly payment and the refundable security deposit, see #5 on page 2 of this Lease), the total of Monthly Payments (see #2 on page 2 of this Lease) and the amounts imposed on you at the end of the Lease Term. Because this disclosure is based on certain assumptions and does not include all costs (such as insurance), your actual total cost of this Lease may differ.

### Notices/Signatures

**NOTICE TO LESSEE:** (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT WHEN YOU SIGN IT.

**LESSEE**

By signing below, you acknowledge that:

This lease is completely filled out;

You have received and read all 9 pages of this lease carefully and agree to all of its terms, **INCLUDING THE IMPORTANT ARBITRATION DISCLOSURES ON PAGE 4;**

You have received a completed copy of this lease; and the Lessor may assign all right, title, and interest in this lease, vehicle and Guaranty to anyone.

**NOTICE: THE LESSEE AND THE LESSOR SHALL BE ENTITLED TO REVIEW THE CONTRACT FOR ONE BUSINESS DAY BEFORE SIGNING THE CONTRACT.**

**CODE RED HEALTHCARE SERVICES**
Lessee

[signature]
By

**MANAGING PARTNER**
Title

**N/A**
Driver's License Number/State

Co-Lessee [signature]

**SHAVON PARKER**
By

**N/A**
Title

**PA**
Driver's License Number/State

### GUARANTY

The Guarantor(s) named below absolutely and unconditionally guarantee(s) payment of all amounts owed under this lease. This means if the lessee(s) fail(s) to pay any money owed, guarantor(s) will pay it. All Guarantors shall be jointly and severally liable and agree that this guaranty shall not be affected by any changes to this lease. Guarantor(s) also agree(s) to be liable for all fees and costs, including attorneys' fees, that the Lessor incurs in enforcing this lease or guaranty.

Guarantor(s) has/have received a completed copy of this lease and guaranty at the time of signing.

**N/A**
Guarantor

**N/A**
Print Name

**N/A**
Address

**N/A**
Address

**N/A**
Guarantor

**N/A**
Print Name

**N/A**
Address

**N/A**
Address

### LESSOR SIGNATURE AND ASSIGNMENT

By signing below, the Lessor accepts the terms and conditions of this lease. Lessor assigns all right, title and interest to this lease, vehicle and Guaranty to Daimler Trust, subject to the terms and conditions of Lessor's agreement(s) with Mercedes-Benz Financial Services USA LLC (P.O. Box 685, Roanoke, TX 76262, phone: (800) 654-6222), servicer for Daimler Trust.

**E-SIGNED by VINAY KHANNA**
Lessor

**FINANCE & INSURANCE MANAGER**
Title

**PLEASE REVIEW ALL PAGES OF THIS LEASE FOR ADDITIONAL TERMS AND CONDITIONS.**

## Operation and Maintenance

**17. Maintenance.** You agree to maintain, service and repair the vehicle with genuine Mercedes-Benz replacement parts according to the manufacturer's recommendations and any applicable warranty. You also agree that bodywork and collision repairs will be performed by authorized Mercedes-Benz collision facilities. You will keep the vehicle in good operating condition and return the maintenance booklets with the vehicle. You agree to comply with all vehicle recall notices. You agree to pay for all operating costs including, but not limited to gas, oil, inspection and certification fees, fines, towing, and replacement tires. Lessor will not provide maintenance services unless you agree at your option to buy a separate maintenance agreement.

**18. Prohibited Uses of Vehicle.** You agree not to use or allow anyone else to use the vehicle: (a) in a way that violates the law or the terms of your insurance policy or that causes cancellation or suspension of any applicable warranty; and (b) to transport goods or people for pay. You also agree not to take the vehicle outside the United States; however, you may take the vehicle to Canada or Mexico for 30 days or less.

Unless the Primary Intended Use is marked as "Business, Commercial, or Agricultural Purposes", you agree that the vehicle will be used primarily for your own personal, family or household use.

You will not change or modify the vehicle's body or interior in any way unless you first get our written consent. If you add parts to the vehicle that cannot be removed without harming the vehicle's usefulness or value, you understand that these parts become our property. We may inspect the vehicle at any reasonable time.

**You will not assign or sublease any interest in the vehicle or this lease.** You will keep the vehicle and lease free from all liens.

You agree that you and anyone else that uses the vehicle are liable for any injury, death, or damage arising out of the use of the motor vehicle, and that we are not liable for any such injury, death or damage.

## Insurance

**19. Vehicle Insurance.** You agree to provide primary insurance coverage as indicated below during the lease and until the vehicle is returned: (a) liability insurance with limits of not less than $100,000 per person for bodily injury, $300,000 per accident for bodily injury and $50,000 per accident for property damage; (b) collision insurance for the actual value of the vehicle and with a deductible no higher than $2,500; (c) comprehensive fire and theft insurance for the actual value of the vehicle and with a deductible no higher than $2,500; and (d) uninsured motorist coverage as required by law in the state where the vehicle is registered. You may obtain insurance from an insurer of your choice that is reasonably acceptable to us. The insurance policy must name Assignee as additional insured and loss payee and you must provide us with a copy of your policy. If you carry excess or umbrella liability insurance, it will include our interest to the extent provided by law. The policy must require the insurance company to notify us at least 30 days in advance of any changes in coverage or cancellation. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure, or impoundment of the vehicle. For claims arising under your insurance that concern physical damage to the vehicle, you appoint us your attorney-in-fact to initiate, settle or release the claim. You authorize us to cash or negotiate checks or drafts or other payments received from your insurance company and endorse your name on such items if you are a payee. You also give us a security interest in any money paid under your insurance.

**No physical damage or liability insurance coverage for bodily injury or property damage caused to others is included in this lease.**

**20. Total Vehicle Loss/Gap Waiver.** If the vehicle is subject to a total loss due to collision, destruction or theft, you will pay us the Gap Amount which is the difference between the Early Termination Liability and the insurance proceeds we receive based on the total loss. We agree to waive the Gap Amount if you had the vehicle insurance required by this lease at the time of total loss, in which case you will pay to us the sum of: (a) all unpaid amounts that are due or past due under this lease; **plus** (b) the amount of your insurance deductible; **plus** (c) any other amounts that were subtracted from the vehicle's actual cash value to determine the insurance proceeds we received for the total loss. If this is a single payment lease, you will receive a refund equal to your lease payment divided by your Lease Term (as shown on page 1 of this lease) times the number of months left in this lease at the time of the loss of the vehicle. If you do not have insurance on the vehicle or your insurance company denies part or all of your claim, you will be in default and will pay us the early termination liability set forth in section 23.

This subsection will not apply and you will be in default if you accept a cash-value settlement from your insurance company without first receiving our consent and forwarding any such settlement to us.

## End of Lease

**21. Purchase Option.** If you purchase the vehicle at any time, you agree to re-register and re-title the vehicle in your name no later than 30 days from the time you purchase it. If you fail to do so, we reserve the right to cancel the registration.

**a. Scheduled Termination.** At the end of the scheduled Lease Term, you may purchase the vehicle "as is" for the amount set forth in section 9 of this lease plus any lease payments or other amounts due under the lease at the time of termination.

**b. Before Scheduled Termination.** At any time before the scheduled Lease End, you have an option to purchase the vehicle "as is" for the Early Purchase Option Price (described below).

**1) Standard Lease - Early Purchase Option Price.** If this is a Standard Lease as indicated on page 1 of the lease, the Early Purchase Option Price is the sum of: (a) any lease payments or other amounts due under the lease at the time of termination; **plus** (b) all fees and taxes assessed on or billed in connection with this lease or the vehicle; **plus** (c) an amount equal to the Vehicle Turn-In Fee on page 2 of this lease; **plus** (d) the Adjusted Lease Balance (explained below); **plus** (e) 4% of the Adjusted Lease Balance.

The **Adjusted Lease Balance** is calculated by reducing the Adjusted Capitalized Cost each month, on each monthly payment due date, by the difference in the base monthly payment and the part of the rent charge earned in that month calculated on a constant yield basis.

**2) Single Payment Lease - Early Purchase Option Price.** If this is a Single Payment Lease as indicated on page 1 of this lease, the Early Purchase Option Price is: (a) any lease payments or other amounts due under the lease at the time of termination; **plus** (b) an amount equal to the Vehicle Turn-In Fee on page 2 of this lease; **plus** (c) all fees and taxes assessed on or billed in connection with this lease or the vehicle; **plus** (d) the Residual Value printed on page 2 of this lease; **plus** (e) 4% of the Residual Value; **less** (f) the unearned rent charges you paid calculated on a constant yield basis.

## End of Lease (Continued)

### 22. Return of Vehicle.

**a. Scheduled Termination.** If this lease is not terminated early and you do not purchase the vehicle, you will, at Lease End: (1) return the vehicle to us at the time and place we specify at your expense; (2) complete and sign an odometer statement and, if not already signed, the vehicle condition report; (3) pay the following amounts: (a) any amount owed for excess wear and use (explained in section 22.a.2.); **plus** (b) all unpaid amounts that are due or past due under this lease; **plus** (c) the Vehicle Turn-In Fee provided on page 2 of this lease; **plus** (d) any official fees and taxes related to the scheduled termination; **plus** (e) the Missing Records Fee in the amount provided on page 3 of this lease, if any maintenance booklets are not returned with the vehicle. You agree to cooperate in the completion of the condition report, which will be prepared close to or at Lease End. You understand that we may engage a third party to conduct the vehicle inspection and to prepare the condition report.

**1) Failure to Return Vehicle.** If, at Lease End, you do not return the vehicle to us or you do not exercise your option to purchase the vehicle, you will be in default and you must pay the purchase price in section 9 unless we agree to an extension in writing. If this is a Standard Lease, as indicated on page 1 of this lease, you will pay an amount equal to your Total Monthly Payment provided on page 2 of this lease for each month, or part thereof, that you retain the vehicle after Lease End until we receive the purchase price, a written extension agreement, or we repossess the vehicle, in which case you will also owe all expenses incurred recovering the vehicle. If this is a Single Payment Lease, as indicated on page 1 of this lease, you will pay an amount equal to the Total Single Payment divided by the Lease Term for each month, or part thereof, that you retain the vehicle after Lease End until we receive the purchase price, a written extension agreement, or we repossess the vehicle, in which case you will also owe all expenses incurred recovering the vehicle. Our acceptance of any lease payments after Lease End does not give you the right to keep the vehicle and it does not mean that we agree to extend this lease.

**2) Standards for Excess Wear and Use.** Unless you are charged an Early Return of Vehicle Charge determined by Calculation A or C in section 22.b. of this lease, if you do not purchase the vehicle, you agree to pay for excess wear and use. Excess wear and use includes a charge for any miles driven in excess of the Mileage Allowance and the estimated cost of repairs to the vehicle that are the result of excess wear and use, whether or not we actually repair the vehicle, except where limited by law. In addition to miles driven in excess of your Mileage Allowance, excess wear and use includes, but is not limited to: (a) damage to the major driveline components (engine, transmission, differential) not covered by warranty; (b) damage to the electrical system or battery; (c) damage to the frame; (d) missing or broken parts, equipment or accessories, including optional factory equipment, keys or remote keyless entry devices, tool kits, or anything else that was in or on the vehicle when you received it; (e) missing tires, tires that are not equivalent in quality and performance to the original tires, tires on each axle that are not the same size, brand, model, type and speed rating, tires that have sidewall plugs, cuts, exposed cords, or are otherwise damaged, tires that have less than 4/32 inch tread; (f) wheels that are scratched, broken, cracked, or otherwise damaged; (g) non-original equipment manufacturer ("OEM") wheels of lesser quality or value than the vehicle's original OEM wheels, including any such non-OEM wheels installed at your request prior to taking delivery of the vehicle at lease inception; (h) OEM wheels modified from the original factory condition, including modifications performed at your request prior to taking delivery of the vehicle at lease inception; (i) damage to the body, fenders, metalwork, lights, trim or paint, including but not limited to dents or rust; (j) damaged or stained dash, floor covers, seats, or any other part of the interior; (k) non-OEM glass, and nonfunctioning, discolored, or broken glass, including, stars, cracks, holes or plugs; (l) failure to maintain the vehicle according to the manufacturer's specifications and as provided for in this lease; (m) after-market alterations made without our consent; (n) water damage; (o) damage that makes the vehicle run in a noisy, rough, or improper way, or that makes the vehicle unsafe or unlawful; (p) paint, covers, coatings or other alterations to the original finish of the vehicle that change all or any part of the vehicle's color or finish from the original color and finish, including any such alteration performed at your request prior to taking delivery of the vehicle at lease inception; and (q) any other damage to the interior or exterior that is beyond ordinary wear and use.

If you do not agree with our invoice for the amount owed for excess wear and use, you may obtain (at your own expense) a professional appraisal of the amount required to repair or replace parts, or the amount which the excessive wear and use reduces the value of the Vehicle. You must notify us in writing within seven (7) business days following the earlier of the mailing or delivery of the invoice if you choose to have such an appraisal done, and the appraisal must be performed within ten (10) business days after you give us notice of your decision to have an appraisal performed. The appraisal shall be performed by an independent third party agreed to by you and Assignee. The appraiser's findings shall be final and binding on you and Assignee. If you fail to give us written notice of your election to obtain an independent appraisal within the time allotted, the amount stated on our invoice for excess wear and use shall be deemed final and binding on you and Assignee.

**b. Early Termination by You.** If you are not in default and you do not purchase the vehicle, you may terminate this lease at any time. If you terminate your lease before the Lease End, you must return the vehicle to us, complete and sign the odometer statement, sign the condition report, and pay your Early Return of Vehicle Charge (described below).

**1) Standard Lease - Early Return of Vehicle Charge.** If this is a Standard Lease, as indicated on page 1 of this lease, your Early Return of Vehicle Charge is determined by Calculation A or Calculation B, below, whichever is less:

**Calculation A:** (1) All unpaid Monthly Payments that have accrued up to the date of termination; **plus** (2) All other unpaid amounts, other than excess wear and use and mileage charges, due under the lease; **plus** (3) All official fees and taxes related to the lease or the vehicle in connection with lease termination; **plus** (4) The Vehicle Turn-In Fee; **plus** (5) Any positive amount determined by subtracting the vehicle's then Fair Market Wholesale Value from the Adjusted Lease Balance; **plus** (6) An early termination fee of 3.15% of the remaining Base Monthly Payments if the Lease Term is 1-59 months or 4.24% of the remaining Base Monthly Payments if the Lease Term is 60 months or more.

**Calculation B:** (1) All Monthly Payments not yet due under the lease; **plus** (2) All unpaid Monthly Payments that have accrued up to the date of termination; **plus** (3) All other unpaid amounts due under the lease; **plus** (4) All official fees and taxes related to the lease or the vehicle in connection with lease termination; **plus** (5) The Vehicle Turn-In Fee; **plus** (6) The amount, if any, for excess wear and use, which includes a charge for excess mileage.

**2) Single Payment Lease - Early Return of Vehicle Charge.** If this is a Single Payment Lease, as indicated on page 1 of this lease, your Early Return of Vehicle Charge is determined by Calculation C or Calculation D, below, whichever is less:

**Calculation C:** (1) All unpaid amounts due under the lease, other than excess wear and use and mileage charges; **plus** (2) All official fees and taxes related to the lease or the vehicle in connection with lease termination; **plus** (3) The Vehicle Turn-In Fee; **plus** (4) Any positive amount determined by subtracting the vehicle's then Fair Market Wholesale Value from the Residual Value; **less** (5) 88.6% of the unearned rent charge calculated on a constant yield basis if the Lease Term is 1-59 months or 85.1% of the unearned rent charge calculated on a constant yield basis if the Lease Term is 60 months or more.

**Calculation D:** (1) All unpaid amounts due under the lease; **plus** (2) All official fees and taxes related to the lease or the vehicle in connection with lease termination; **plus** (3) The Vehicle Turn-In Fee; **plus** (4) The amount, if any, for excess wear and use, which includes a charge for excess mileage.

## End of Lease (Continued)

**3) Fair Market Wholesale Value.** The Fair Market Wholesale Value will be determined in one of the following ways: (a) in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles; (b) by disposing of the vehicle in a commercially reasonable manner; (c) within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the vehicle that could be realized at sale; the appraised value shall be a binding determination of the Fair Market Wholesale Value; (d) if the vehicle is subject to a total loss due to collision, destruction or theft as determined by us, the Fair Market Wholesale Value will equal: (i) the amount of any proceeds we receive from your insurance; **plus** (ii) the amount of our deductible under such insurance if that amount has been paid to us; if there are no insurance proceeds, the Fair Market Wholesale Value will be zero.

### 23. Default.

**a. Early Termination by Us.** We may terminate this lease at any time if you are in default (see section 23.b.), and you must pay us your Early Termination Liability. Your Early Termination Liability equals all expenses related to recovering, obtaining, storing and preparing for sale and selling the vehicle, including, but not limited to, reasonable attorney fees, collection costs, and court costs, to the extent not prohibited by law; **plus:** (1) if this is a Standard Lease as indicated on page 1 of this lease, the amount determined by Calculation A in section 22.b.; or (2) if this is a Single Payment Lease as indicated on page 1 of this lease, the amount determined by Calculation C in section 22.b.

**b. Events of Default.** You will be in default if: (1) you fail to make any payment when due, including any amount required to be paid under the sections of this lease entitled RETURN OF VEHICLE, Scheduled Termination or Early Termination by you; (2) you break any promise or conditions in the lease or any other agreement with us; (3) you fail to maintain required insurance or you do anything that invalidates your required insurance; (4) you fail to return the vehicle as we specify; (5) you gave false or misleading information to us on your credit application or other document; (6) you die (and your surviving spouse does not continue to make payments due in accordance with the lease terms), are declared incompetent, become insolvent, a bankruptcy petition is filed by or against you, or you dissolve active business affairs; (7) the vehicle is seized or levied upon by any government or legal process; (8) the vehicle is destroyed, abandoned, stolen or damaged beyond repair; (9) your driver's license expires or is suspended, revoked, or canceled; or (10) anything else happens that we reasonably believe in good faith endangers the vehicle or your ability to pay.

**c. Remedies for Default.** If you are in default, you will owe your Early Termination Liability provided in section 23.a., and we may take any or all of the following actions: (1) terminate this lease and your rights to the vehicle; (2) take possession of the vehicle without prior demand, unless notice or demand is required by law; (3) take reasonable action to prevent the default or our loss; (4) require you to return the vehicle and any related records; (5) make a claim for insurance, service, maintenance or other optional contract benefits or refunds available on your default and apply such amount to the amount you owe under this lease; or (6) use any remedy we have at law or in equity. You agree to reimburse us for any amounts we choose to pay under this lease that you are required to pay, including amounts we pay to cover your default or enforce our right to the vehicle. You agree that in the event we hire an attorney to collect any amount due or enforce any right or remedy under this lease, you shall pay our attorney fees and court costs.

If we take possession of the vehicle as provided in section 23.c.2., we may take any personal property in the vehicle. We will hold the personal property for you for 20 days. If you do not pick up the property within that time, we may dispose of it in any manner.

**24. Interest on Unpaid Amounts.** You understand and agree that upon termination of this lease for any reason, if you do not pay us any amount you owe us upon our demand, in addition to the amount unpaid, you will owe us interest on such amount at the annual rate of 6% (or such lesser maximum rate as applicable law permits).

## Additional Information

**25. Assignment and True Lease.** You understand that this is a true lease and that you do not have equity or other ownership rights in the vehicle unless you purchase it from us. You may not assign, sell, sublease or arrange an assumption of your interests or rights under this lease or in the vehicle without our written permission. You understand that we may assign our rights and obligations under this lease at any time or to anyone, including Daimler Trust, without first notifying you. You agree and grant us permission to provide information about you, the vehicle or this lease to our affiliates at any time, subject to the terms of the Assignee's Privacy Policy. Lessor and its employees are not agents of Assignee and have no authority to obligate Assignee. Mercedes-Benz Financial Services USA LLC ("MBFS"), as the servicing agent for Daimler Trust, has the power to act on Daimler Trust's behalf to administer, enforce and defend this lease. You agree to pay all amounts due under this lease to MBFS or as otherwise directed by MBFS.

**26. Late Charges/Returned Payment and Other Fees/Fines and Tickets.** If we do not receive the entire amount of your Monthly Payment within 15 days after it is due, you will pay us a late fee of **$50** or 5% of the unpaid amount whichever is less. If any check, draft, order, or other payment instrument is returned to us for any reason, or if any authorized electronic debit is not paid, you will pay us a fee of **$25**. You agree to pay all fines and tickets imposed on the vehicle or its driver. If you do not pay such fines or tickets and we pay, you will reimburse us, and pay us an administration fee of **$25** to the extent permitted by law. Unless prohibited by applicable law, you agree to pay a processing fee in connection with any payment you make to us by authorizing us, or a bill payment service, orally or in writing, to write a check on your behalf, use automated clearing house procedures, or use any other commercially accepted practice to make your payment from your checking or other account. The amount of the processing fee will be the amount you agree to, orally or otherwise, at the time you authorize us or the bill payment service to process your payment.

**27. Indemnification.** You will defend, indemnify and hold harmless Lessor and Assignee from and against any loss and all losses or damages to the vehicle and from all claims, losses, suits, actions, liabilities, costs and expenses (including, but not limited to reasonable attorney fees) related to and/or against the use, operation or condition of the vehicle.

**28. Notices/General.** We will send notices and correspondence to you at the billing address you provided on this lease. If this address or the garage address changes, you will inform us, in writing, within **30** days of the change. **To the extent permitted by law, you give us permission to monitor and record any telephone conversation between you and us.** Section headings in this lease are for convenience of reference only and are not part of the lease for any other purpose.

## Additional Information (continued)

**29. Refundable Security Deposit.** The Refundable Security Deposit may be used to pay all amounts that you fail to pay under this lease or to satisfy any remedy for Default. Any portion of the Refundable Security Deposit not applied to amounts that you owe will be returned to you after termination of this lease and our determination that the amounts you owed at the end of this lease have been paid. Even if we have refunded to you all or any portion of the Security Deposit, you are still responsible for amounts due and owing after termination of this lease, such as personal property tax. You may not apply any portion of the Security Deposit to a Monthly Payment. You will not earn interest on the Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Security Deposit will neither be paid to you nor applied to reduce your obligations under this lease.

**30. Modification.** Any change to this lease must be in writing and signed by Assignee. However, if permitted by law, extensions, deferrals, or due date changes may be agreed to orally by you and Assignee, and we will send you written confirmation.

**31. Enforceability.** Each person who signs this lease is jointly and severally liable under this lease and for all payments, whether or not we try to collect from the other signers. We do not have to repossess the vehicle to exercise any other rights. We do not give up any of our rights by delaying or failing to exercise them. This lease is subject to the laws of the state where it was signed. This lease is the entire agreement between you and us and is binding on anyone who assumes our interest in it. We are not bound by any statements or representations made by agents or sales people if not contained in this lease. We make no promises regarding any tax benefits to you from leasing. If we waive any provision of this lease or if any provision in this lease is held to be unenforceable, void, illegal or otherwise against applicable law, the other provisions shall survive and be enforceable separately from any voided provisions, unless otherwise provided in this lease.

**32. Delivery.** You accept delivery of the vehicle described in this lease and acknowledge that it is equipped as described, is in good operating order and condition, and has the odometer reading recorded on page 1 of this lease in the Vehicle Information section.

**33. Payment Obligations.** You may not change or stop any lease payments for any reason, even if you do not receive an invoice, and even if the vehicle is stolen, destroyed, seized by the government or a court, experiences mechanical problems, or does not satisfactorily perform. If you experience mechanical or other difficulties with the vehicle, you will pursue these issues with the manufacturer.

If any payment received or applied is avoided, set aside, or returned for any reason, including, without limitation, the bankruptcy or insolvency of you or any other payor or person, the indebtedness to which the payment was applied shall for all purposes be deemed to have continued in existence notwithstanding our application of such payment, and the lease shall be enforceable as to that indebtedness as fully as if we had not received or applied the payment.

**34. Taxes, Registration and Titling.** You agree to title, register and license the vehicle in the state in which it is primarily located. You are aware that the vehicle is to be titled in our name. You must request any power of attorney required from us to title, register, or license the vehicle. You agree to promptly pay all title, registration, license, inspection, testing, personal property taxes, and other fees, taxes and charges imposed by government authorities in connection with the vehicle, this lease, or any amounts due or payable arising from this lease. We may pay any or all license, title and registration costs, fees, charges and taxes relating to the vehicle or this lease that you do not pay, and you agree to reimburse us for all such amounts. We have no duty to account to you for the fees, charges, or taxes we pay. You are responsible for any fines, penalties, and/or interest if you do not pay a bill when it is due. If the vehicle is primarily located in a state other than a state that bills you directly for personal property tax, we will invoice you for personal property tax, if applicable, after we have been billed by the taxing authority. During the term of this lease, you agree to pay the invoice amount on or before your next Monthly Payment due date. We may receive some bills after this lease has ended. If this lease has ended, you agree to pay us within 10 days of being invoiced. If the vehicle is primarily located in a state that bills you directly for personal property tax, you will pay the state DIRECTLY for the personal property tax owed on the vehicle. If you do not pay, and we pay the personal property tax, you will reimburse us the cost of the personal property tax and any penalties incurred.

**35. Security Interest.** You grant us a security interest, to the extent permitted by law, in the following, to secure performance of your lease obligations: (1) proceeds of any insurance with respect to the vehicle; (2) proceeds of any optional service, maintenance or other contract purchased with this lease; and (3) any unearned premiums, charges or refunds of any of the foregoing.

The conditions, if any, under which you may cancel any such optional contract are contained in the agreement under which the services or coverage are to be provided. In the event you cancel any such contracts purchased with this lease, you authorize MBFS to receive any refund of unearned premiums or charges on your behalf and apply the refund against the amount you owe under this lease.

**You will not allow any lien or encumbrance to attach to the vehicle.**

If this is a Standard Lease as indicated on page 1 of this lease, Daimler Trust grants a security interest in the vehicle to Daimler Title Co., as collateral agent, pursuant to the Collateral Agency Agreement dated as of August 1, 2007, as amended.

**36. Power of Attorney.** You appoint us, to the extent permitted by law, through our appointed officer or employee, as your attorney-in-fact to act on your behalf in any insurance/coverage matter relating to the vehicle, including, but not limited to, the power to endorse insurance/coverage proceeds checks or drafts on your behalf; to cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or other optional insurance/coverage financed under this lease; and apply the refunded premium or cost to your outstanding balance if you are in default. Your grant of this power of attorney is coupled with an interest and is irrevocable until all obligations you owe under this lease are paid in full.

**37. Vehicle Location Consent.** Notwithstanding anything in the Terms of Use for the Mercedes me connect Services, Mercedes-Benz mbrace™ Terms of Service, or any other similar agreement or document provided or made available to you in connection with your Mercedes-Benz vehicle, if you are in default, you consent and authorize us and our agents, representatives and affiliates, and any service provider acting on our behalf, to (a) obtain data from the vehicle, including the location of the vehicle, (b) release the data to us, our affiliates and service providers, and (c) use such data for the purpose of locating the vehicle, including with respect to repossession of it. This consent supersedes any deactivation of any Mercedes me connect, mbrace™, or other services.